# United States Court of Appeals for the Federal Circuit

2009-1497
(Serial No. 76/678,969)

IN RE MIGHTY LEAF TEA

Charles C. Valauskas, Valauskas & Pine LLC, of Chicago, Illinois, for appellant. With him on the brief was Allison M. Corder.

Raymond T. Chen, Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Thomas V. Shaw and Janet A. Gongola, Associate Solicitors.

Appealed from:  United States Patent and Trademark Office
                Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

2009-1497
(Serial No. 76/678, 969)

IN RE MIGHTY LEAF TEA

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED: April 13, 2010

_____

Before NEWMAN, CLEVENGER, and LINN, <u>Circuit Judges</u>.

NEWMAN, <u>Circuit Judge</u>.

Mighty Leaf Tea appeals the decision of the Trademark Trial and Appeal Board affirming the refusal to register the mark ML, in standard character form, for use with certain personal care and skin care products. <u>In re Mighty Leaf Tea</u>, No. 76678969 (TTAB May 8, 2009). We affirm the Board's decision.

## BACKGROUND

On July 2, 2007 Mighty Leaf Tea filed an application to register the mark ML on the Principal Register in Class 003, for "personal care products and skin care preparations, namely, skin soap, body wash, foam bath, body lotion, body scrub, bath salts and massage oil; potpourri; incense." The applicant asserted first use in commerce on November 1,

2004. The Examining Attorney rejected the application under Section 2(d) of the Lanham Act, 15 U.S.C. §1052(d),[1] finding likelihood of confusion with the mark ML MARK LEES shown below, registered in Class 003 on January 27, 1998, for "skin care products, namely, skin cleanser, skin toner, skin cream, skin lotion, skin mask gel, make-up foundation, powder and blush":



In response to the rejection, Mighty Leaf Tea stated that it sought to register the mark ML in standard character form,[2] as distinguished from the stylized form shown, and also stated that the Examining Attorney erred by failing to determine whether and to what extent similar marks were in use on similar goods. Mighty Leaf Tea argued that the

---

[1] Section 2(d) states, in relevant part:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

. . . .

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive . . . .

[2] "Standard character" marks are registered "without claim to any particular font style, size, or color." 37 C.F.R. §2.52(a). These marks were formerly known as "typed" marks, see Trademark Manual of Examining Procedure §807.03(i) (5th ed. 2007), until the PTO changed the nomenclature in 2003 to conform with international norms established under the Madrid Protocol, see Rules of Practice for Trademark-Related Filings Under the Madrid Protocol Implementation Act, 68 Fed. Reg. 55,748, 55,755 (2003) (explaining revisions to 37 C.F.R. §2.52).

existence of many similar marks showed the weakness of the registered marks, such that consumers would look to fine distinctions to distinguish the sources of goods. Mighty Leaf Tea submitted evidence of several third-party registrations and pending applications that included the letters "ML" along with other letters. The cited registered marks are MLE, MLUXE, M'LIS, JML, and AMLAVI, and the cited pending applications are for MLAB, TMLA, FEMLOGIC, and SIMLINE; all are for personal care or skin care products and thus within the relevant market as defined by the Examining Attorney. The Examining Attorney maintained the refusal to register, and the Board affirmed.

The Board discussed the DuPont factors, relevant to determination of likelihood of confusion, as set forth in In re E.I. DuPont De Nemours & Co., 476 F.2d 1357, 1361 (CCPA 1973). The Board found that the goods defined in the subject application and the cited registration are in part identical, and that neither the trade channels nor the conditions of sale serve to distinguish them. The Board found that each mark includes the letters "ML," and that the stylized form of the cited registration does not distinguish it because Mighty Leaf Tea seeks to register ML in standard character form, which is not limited to any particular style. The Examining Attorney had observed that "applicant's specimen of record shows applicant's use of its mark in a stylized ML presented in a highly cursive, abstract fashion which is similar to the stylized ML presented in a highly cursive, abstract fashion shown as a component of the registered mark."

The Board found that the presence of the name MARK LEES in the registered mark does not diminish the likelihood of confusion, because consumers familiar with the registered mark are likely to assume that applicant's ML is merely a variation or shortened version of the registered mark. The Board took note of Mighty Leaf Tea's evidence of third-

party marks that include the letters "ML," but observed that inclusion of the letters "ML" in other words or aggregates does not render these marks so similar and weak that the public would be alert to small differences. The Board concluded that ML used with the designated goods was likely to cause confusion with ML MARK LEES for the same goods.

DISCUSSION

Likelihood of confusion under Section 2(d) of the Lanham Act is a legal determination based on factual underpinnings. In re Chatam Int'l Inc., 380 F.3d 1340, 1342 (Fed. Cir. 2004). The Board's legal conclusion receives plenary review, while the factors relevant to likelihood of confusion are reviewed for support by substantial evidence, in accordance with the criteria of the Administrative Procedure Act. Bose Corp. v. QSC Audio Prods., Inc., 293 F.3d 1367, 1370 (Fed. Cir. 2002). Evidence is deemed substantial if a reasonable person could find that the evidence is adequate to support the agency's finding. On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1085 (Fed. Cir. 2000).

Not all of the DuPont factors are relevant to every case, and only factors of significance to the particular mark need be considered. In re Dixie Restaurants, Inc., 105 F.3d 1405, 1406–07 (Fed. Cir. 1997). No mechanical rule determines likelihood of confusion, and each case requires weighing of the facts and circumstances of the particular mark. In re Shell Oil Co., 992 F.2d 1204, 1206 (Fed. Cir. 1993). As applied to trademark registration, reasonable doubt as to the likelihood of confusion is resolved against the newcomer, "for the newcomer has the opportunity of avoiding confusion, and is charged with the obligation to do so." Id. at 1209; see also Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1265 (Fed. Cir. 2002).

Mighty Leaf Tea argues that the Board erred in its analysis of the DuPont factors, and focuses primarily on the sixth factor: "The number and nature of similar marks in use on similar goods."  476 F.2d at 1361; see Trademark Manual of Examining Procedure §1207.01 (the sixth DuPont factor is among those "most relevant" in an ex parte case). Mighty Leaf Tea states that the Board did not have a correct understanding of the relevant marketplace because it focused on only one similar registered mark, without considering other similar marks in use on similar goods.  Mighty Leaf Tea contends that its evidence of third-party registrations and pending applications that incorporate the letters "ML" shows that ML is a weak mark, and that consumers are already conditioned to look to minor distinctions in marks that include the letters "ML," citing Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondée en 1772, 396 F.3d 1369, 1373 (Fed. Cir. 2005) ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.").  Mighty Leaf Tea argues that its evidence of third-party use was given inadequate weight by the Board, and that when properly considered, this evidence confirms that confusion is unlikely to occur between its mark and the cited registered mark.

The Patent and Trademark Office ("PTO") responds that the Board afforded appropriate weight to all of the relevant DuPont factors, and that substantial evidence supports the Board's findings underlying its conclusion of likelihood of confusion.  As to the sixth DuPont factor, the PTO states that the mere presence of similar third-party registrations, without more, is of only limited value for showing whether additional entrants would lead to confusion in use.  See Palm Bay Imports, 396 F.3d at 1373 ("The probative value of third-party trademarks depends entirely upon their usage."); Tektronix, Inc. v.

Daktronics, Inc., 534 F.2d 915, 916 (CCPA 1976) ("[A]lthough third-party registrations are entitled to little weight on the question of likelihood of confusion where there is no evidence of actual use, they may be given some weight to show the meaning of a mark in the same way that dictionaries are used."); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §11:89 (4th ed. 2009) ("The mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness."). Mighty Leaf Tea provided no evidence of the actual use of these third-party marks, but contends that the cited registrations themselves establish use, because use in commerce is a prerequisite to registration. However, the issue is likelihood of confusion, and on the facts herein more is required than a showing of the existence of various marks. No additional evidence, or proffer, was presented to contravene the Board's finding that the third-party marks were not similar enough to the mark ML to establish that there is a crowded field for the letters "ML." The Board stated:

> Applicant has merely submitted a group of registrations that have the letters "ML" as part of a longer letter string (i.e., MLUXE, M'LIS, JML and AMLAVI). The indiscriminate citation of third-party registrations without regard to the similarity of the marks involved is not indicative that the letters ML have a suggestive or descriptive connotation. The only mark that is arguably close to applicant's mark and registrant's mark is MLE, but that registration in addition to the marks at issue are not sufficient to demonstrate that the letters "ML" have significance in connection with skin care products.

Mighty Leaf Tea, Op. at 11 (citations omitted).

In response, Mighty Leaf Tea cites precedent in which consumer confusion was not deemed likely to result from marks incorporating a common element. See, e.g., In re Broadway Chicken, Inc., 38 USPQ2d 1559, 1565–66 (TTAB 1996) (evidence showed that third-party use of the term BROADWAY was so common that consumers would look to the other elements of applicant's mark BROADWAY CHICKEN and thereby would distinguish

the source of the goods from BROADWAY PIZZA and BROADWAY BAR & PIZZA).  The PTO argues that this reasoning is not applicable here, because Mighty Leaf Tea has not made an adequate showing of a common element.  The PTO states that the letters "ML" in various character strings does not establish these two letters as a common element, such as "Broadway," that has acquired an understood meaning or suggestiveness.  We agree that the occurrence of two letters in longer words or strings does not of itself establish a "common element," for there was no evidence that the two letters "ML" had any recognized meaning or significance within the longer strings.  The Board appropriately gave little weight to the proffered evidence of third-party use in view of these considerations.

Mighty Leaf Tea also contends that the additional words MARK LEES distinguish the registrant's mark from ML standing alone.  However, as the PTO states, the presence of an additional term in the mark does not necessarily eliminate the likelihood of confusion if some terms are identical.  See, e.g., China Healthways Inst., Inc. v. Wang, 491 F.3d 1337, 1341 (Fed. Cir. 2007) (the common word in CHI and CHI PLUS is likely to cause confusion despite differences in the marks' designs); In re West Point–Pepperell, Inc., 468 F.2d 200, 201 (CCPA 1972) (WEST POINT PEPPERELL likely to cause confusion with WEST POINT for similar goods); Lilly Pulitzer, Inc. v. Lilli Ann Corp., 376 F.2d 324 (CCPA 1967) (THE LILLY as a mark for women's dresses is likely to be confused with LILLI ANN for women's apparel including dresses); In re United States Shoe Corp., 229 USPQ 707 (TTAB 1985) (CAREER IMAGE for women's clothing stores and women's clothing likely to cause confusion with CREST CAREER IMAGES for uniforms including items of women's clothing).  In United States Shoe the Board observed that "Applicant's mark would appear to prospective purchasers to be a shortened form of registrant's mark."  229 USPQ at 709.

2009-1497                                         7

In this case the Board found, similarly, that ML is likely to be perceived as a shortened version of ML MARK LEES when used on the same or closely related skin care products. The Board thus recognized that these initials comprise a dominant feature of the registered mark, and that a newcomer's use of the same initials, in connection with the same goods, would likely lead consumers to view the goods as coming from the same source. Avoidance of this kind of confusion about the provenance of goods is the very problem to which the Lanham Act was directed. See DuPont, 476 F.2d at 1360 ("The basic goal of the Act, which dealt with a good deal more than registration, was 'the protection of trademarks, securing to the owner the good will of his business and protecting the public against spurious and falsely marked goods.'").

The Board also recognized that "when marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of Am., 970 F.2d 874, 877 (Fed. Cir. 1992). The Board found that the specific style of the letters "ML" in the registered mark could not serve as a basis for distinction, because the appellant sought to register ML in standard character form; these marks "are not limited to any particular rendition of the mark." Cunningham v. Laser Golf Corp., 222 F.3d 943, 950 (Fed. Cir. 2000). In view of these considerations, the Board determined that the applicant's mark and the registrant's mark are similar "as to appearance, sound, connotation, and commercial impression" (DuPont factor one). There was no contrary evidence before the Board.

The PTO points out that several other DuPont factors also support the Board's ultimate conclusion as to likelihood of confusion. The Board found that the appellant's and the registrant's goods were quite similar (DuPont factor two), and that the goods share the

same channels of trade and purchasers (<u>DuPont</u> factor three).  The Board also found that these goods are relatively low-priced, and do not require much consumer sophistication (<u>DuPont</u> factor four).  Mighty Leaf Tea has not contested these findings, each of which provides additional support for the Board's conclusion.

While likelihood of confusion turns on the facts and evidence as to the particular mark, we agree with the Board that customer confusion is likely between ML and ML MARK LEES, when used on nearly identical goods.  The decision of the Board is affirmed.

<u>AFFIRMED</u>