THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
November 27, 2012

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re RiseSmart, Inc.*

_____

Serial Nos. 85050089 and 85075422[1]

_____

Dyan M. House of Carter Stafford Arnett Hamada & Mockler PLLC

Florentina Blandu, Trademark Examining Attorney, Law Office 117 (J. Brett Golden, Managing Attorney)

_____

Before Kuhlke, Wolfson and Greenbaum, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Applicant, RiseSmart, Inc., filed applications to register on the Principal Register the marks TALENT ASSURANCE[2] in standard characters for services identified as "personnel placement and recruitment services" in International Class

---

[1] Inasmuch as the issues raised by the above-listed appeals are similar, the Board is addressing them in a single opinion. Citations to the briefs refer to the briefs filed in application Serial No. 85050089 unless otherwise noted; however, we have, of course, considered all arguments and evidence filed in each case.

[2] Application Serial No. 85050089, filed on May 28, 2010, based on allegations of first use and first use in commerce on April 9, 2010, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a).

35 and JOB ASSURANCE[3] in standard characters for services identified as "employment counseling and recruiting services; employment outplacement services" in International Class 35.

Registration has been refused under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that applicant's marks in each application, when used with its identified services, so resemble the registered mark ASSURANCE in typed form for "temporary personnel services," in International Class 35,[4] as to be likely to cause confusion, mistake or deception. In addition, in each application the trademark examining attorney refused registration pursuant to Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), based on applicant's failure to comply with the requirement to disclaim the words TALENT and JOB respectively on the ground that they are merely descriptive of applicant's services within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1).

When the refusals were made final, applicant appealed and requested reconsideration. After the examining attorney denied the requests for reconsideration, the appeals were resumed.

We begin with the disclaimer requirements. In its request for reconsideration and again in its brief, applicant consented to entry of the disclaimers for TALENT and JOB in the *alternative* but clearly *maintained* that

---

[3] Application Serial No. 85075422, filed on June 30, 2010, based on an allegation of a bona fide intention to use the mark in commerce, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

[4] Registration No. 1563713, issued on October 31, 1989, renewed.

these terms are not merely descriptive but rather suggestive. App. Br. p. 4. The examining attorney took the position that in view of applicant's disclaimers of the terms TALENT and JOB, the "only issue on appeal" is the refusal issued under Section 2(d). Ex. Att. Br. p. 2. This is not correct. By analogy, when an applicant responds to a refusal based on mere descriptiveness of a mark, or portion of a mark, by claiming acquired distinctiveness, such amendment to seek registration under Section 2(f) of the Trademark Act is considered an admission that the proposed mark is not inherently distinctive. See Yamaha Int'l Corp. v. Hoshino Gakki Co., 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988); In re Cabot Corp., 15 USPQ2d 1224, 1229 (TTAB 1990). However, when a claim under Section 2(f) is presented in the alternative, it does not serve as an admission of mere descriptiveness. In re Thomas Nelson, Inc., 97 USPQ2d 1712, 1713 (TTAB 2011). Here, applicant clearly stated that it offered the disclaimer in the alternative but maintained that these terms are not merely descriptive. Thus, the disclaimer requirement issue is not moot.

In support of her position that TALENT is merely descriptive of applicant's services the examining attorney argues that TALENT is defined as "the natural endowments of a person"[5] and because applicant's services consist of seeking out people who are talented in particular fields, the word is merely descriptive. She submitted several third-party registrations for similar services that include the word TALENT in the mark and it is disclaimed. See, e.g., Reg. No. 2763783 for the

---

[5] Merriam-Webster Online Dictionary, www.merriam-webster.com, attached to First Office Action (September 17, 2010).

3

mark TALENT TRAK; Reg. No. 3626365 for the mark TALENT HOG; and Reg. No. 3166103 for the mark TALENT MAGNET.  In addition, she points to an excerpt from applicant's website wherein applicant uses the term TALENT in a descriptive manner as set forth below:

> The talent management startup has raised an aggregate
> of ...  RiseSmart provides talent management solutions at
> the two most critical talent transition points:  joining and
> leaving an organization. [6]

With regard to the word JOB, the examining attorney argues that JOB is merely descriptive because applicant's services aid others to obtain jobs.  In support of her position she submitted several third-party registrations for similar services that include the word JOB in the mark and it is disclaimed.  See, e.g., Reg. No. 3346391 for the mark JOB KEYWORDS; Reg. No. 3826838 for the mark JOB CONNECT; and Reg. No. 3204653 for the mark MAX JOB.  She also submitted excerpts from third-party webpages discussing similar services where the word JOB or JOBS is used descriptively, in particular, in relation to applicant, as set forth below:

> RiseSmart, Inc. offers online job services.  It provides services for job
> seekers and recruiters.  It offers ... a human-powered job search service
> that prescreens online search results for managers and executives... [7]

An examining attorney may require an applicant to disclaim an unregistrable component of a mark otherwise registrable.  Trademark Act Section 6(a).  Merely

---

[6] RiseSmart, Inc. webpage, www.risesmart.com, attached to Final Office Action (April 13, 2011).

[7] Business Week, http://investing.businessweek.com, attached to Final Office Action.

descriptive terms are unregistrable, under Trademark Act Section 2(e)(1) and, therefore, are subject to disclaimer if the mark is otherwise registrable. Failure to comply with a disclaimer requirement is ground for refusal of registration. See In re Stereotaxis, Inc., 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005); In re Richardson Ink Co., 511 F.2d 559, 185 USPQ 46 (CCPA 1975); In re Ginc UK Ltd., 90 USPQ2d 1472 (TTAB 2007); In re National Presto Industries, Inc., 197 USPQ 188 (TTAB 1977); and In re Pendleton Tool Industries, Inc., 157 USPQ 114 (TTAB 1968).

We find that the record supports the disclaimer requirement in each instance. The word TALENT in the context of applicant's personnel placement and recruitment services immediately informs the consumer about a significant feature of the services, i.e., that applicant provides talent, namely, personnel with the required skill set.

Applicant points to the other listed definitions of TALENT, "a special often athletic, creative, artistic aptitude," "general intelligence or mental power," and "a person of talent or a group of persons of talent in a field or activity"[8] and argues that because TALENT is suggestive of some other relevant association, it does not immediately describe the services. We find each of these definitions, when used in connection with applicant's services, to describe the same characteristic, as noted above, i.e., that applicant's services provide to employers personnel with whatever skill set is required. In addition, to the extent applicant is arguing that TALENT has different meanings, the fact that a term may have different meanings in other

---

[8] Merriam-Webster Online Dictionary.

contexts is not controlling on the question of descriptiveness. In re Chopper Indus., 222 USPQ 258, 259 (TTAB 1984).

In response to the examining attorney's proffered third-party registrations, applicant submitted several third-party registrations wherein TALENT was not disclaimed. However, most of the marks in the registrations appear to be slogans and, as such, a disclaimer of the individual word would not be required, or, in one case, the registration is on the Supplemental Register which supports the examining attorney's position. See TMEP § 1213.05 (8th ed. rev. 2012). See, e.g., Reg. No. 3645226 for the mark TALENT CENTRIC on the Supplemental Register; Reg. No. 3904142 for the mark WE HAVE YOUR TALENT COVERED; Reg. No. 3904144 for the mark TRANSITIONING TALENT. CHANGING LIVES; and Reg. No. 4020649 for the mark TODAY'S TALENT. TOMORROW'S SUCCESS.

Applicant also argues that disclaimer of the word TALENT is inappropriate because the mark presents a double entendre in that it "tells consumers that users of Applicant's personnel placement and recruitment services will be presented with capable, talented candidates. It further provides an indication of Applicant's guarantee to its customers that their staffing needs will be met because Applicant will supply the personnel, or to use the slang, the 'talent'." App. Br. pp. 9-10. Thus, applicant argues that TALENT ASSURANCE "refers to both the quality of the candidates and the quality of [applicant's] services." Id. We do not find TALENT ASSURANCE to present a double entendre such that "the merely descriptive significance of the term [TALENT] is lost in the mark as a whole." In re Kraft, Inc.,

6

218 USPQ 571, 573 (TTAB 1983). See also In re Colonial Stores Inc., 394 F.2d 549, 157 USPQ 382 (CCPA 1968) (SUGAR & SPICE double entendre for bakery products); and In re National Tea Co., 144 USPQ 286 (TTAB 1965) (NO BONES ABOUT IT double entendre for fresh pre-cooked ham). Moreover, to the extent it does present two meanings they are both merely descriptive of the services in that both asserted meanings refer to the customers' needs being met by the provision of the appropriate capabilities/qualities. See TMEP § 1213.05(c).

We also find the term JOB to be merely descriptive of applicant's "employment counseling and recruiting services," and "employment outplacement services." It clearly, without further thought, directly describes the significant feature of applicant's employment placement services, namely that applicant places people in jobs, i.e., employment, as described in the press and on its website. Again, the third-party registrations offered by applicant that include the word JOB in their marks are, for the most part, for slogan marks where a disclaimer is unnecessary.

In view of the above, the disclaimer requirement in each application is appropriate.

We turn then to the refusals under Section 2(d) based on the prior-registered mark ASSURANCE for "temporary personnel services," in International Class 35. When the question is likelihood of confusion, we analyze the facts as they relate to the relevant factors set out in In re E. I. Du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). See also In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion

7

analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).

We begin with the du Pont factor of the relatedness of the services. We base our evaluation on the services as they are identified in the registration and applications. Octocom Systems, Inc. v. Houston Computers Services Inc., 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). See also Hewlett-Packard Co. v. Packard Press Inc., 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002). It is settled that it is not necessary that the respective services be identical or even competitive in order to find that they are related for purposes of our likelihood of confusion analysis. That is, the issue is not whether consumers would confuse the services themselves, but rather whether they would be confused as to the source of the services. See In re Rexel Inc., 223 USPQ 830 (TTAB 1984). The services need only be sufficiently related that consumers would be likely to assume, upon encountering the services under similar marks, that the services originate from, are sponsored or authorized by, or are otherwise connected to the same source. See In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); In re Melville Corp., 18 USPQ2d 1386 (TTAB 1991).

Applicant did not present argument in its brief regarding this factor and we find that the identifications of applicant's "personnel placement and recruitment services" and "employment counseling and recruiting services; employment outplacement services" encompass registrant's identified "temporary personnel

services" and, as such, are legally identical. Moreover, the record supports a finding that these services are closely related. The examining attorney submitted copies of third-party registrations that include applicant's and registrant's services and serve to suggest that the services are of a kind that may emanate from a single source. See In re Infinity Broad. Corp., 60 USPQ2d 1214, 1217-18 (TTAB 2001); In re Albert Trostel & Sons Co., 29 USPQ2d 1783, 1785-86 (TTAB 1993). See e.g., Reg. No. 1474633 for the design mark THE PERSONNEL DEPARTMENT (Supplemental Register) for "providing permanent and temporary personnel services to businesses"; Reg. No. 2818268 for the design mark FINANCIAL TALENT (Financial Talent disclaimed) for "temporary and permanent personnel placement of financial and accounting personnel"; Reg. No. 3166103 for the mark TALENT MAGNET (Talent disclaimed) for "temporary and permanent personnel placement and recruiting services." In addition, she submitted webpages from third-party websites showing the provision of both "personnel placement and recruitment services" and "temporary personnel services" under the same mark. See e.g., webpage for Temporary Personnel Services, Inc. (www.pa-business-directory.com).

Further, because the services are legally identical and there are no limitations in the identifications, we must presume that they are offered in the same channels of trade to the same classes of customers. In re Viterra, Inc., 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012), quoting Hewlett-Packard Co., 62 USPQ2d 1001.

In view of the above, we find that the services are legally identical and are offered in the same channels of trade the same potential consumers.

In considering the du Pont factor of the similarities and dissimilarities between applicant's marks TALENT ASSURANCE and JOB ASSURANCE, and registrant's mark ASSURANCE, we analyze "the marks in their entireties as to appearance, sound, connotation and commercial impression." Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) quoting du Pont, 177 USPQ at 567. Further, where the services are legally identical, the degree of similarity between the marks necessary to support a determination that confusion is likely declines. Viterra, 101 USPQ2d at 1908; In re Mighty Leaf Tea, 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); In re Max Capital Group Ltd., 93 USPQ2d 1243, 1248 (TTAB 2010).

Applicant's marks TALENT ASSURANCE and JOB ASSURANCE incorporate the entirety of the cited mark ASSURANCE. Further, we find that the dominant element in each of applicant's marks is the word ASSURANCE. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985) (It is well settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature when evaluating the similarities of the marks.) As discussed above, the additional words TALENT and JOB are merely descriptive of applicant's respective services. However, even if viewed as only suggestive, as applicant argues, we find that ASSURANCE is the

more dominant term in applicant's mark. TALENT and JOB are more specific in their suggestiveness, in that "talent" refers to personnel and "job" refers to employment, whereas ASSURANCE is more ambiguous, evoking the idea of security or confidence.[9] Applicant argues that the examining attorney improperly dissected the marks in her analysis. We do not discern an improper dissection; rather, the examining attorney properly weighed the different features of the marks in her analysis of the marks in their entireties. Nat'l Data Corp., 224 USPQ at 751-2 (Regarding descriptive terms, the court noted that the "descriptive component of a mark may be given little weight in reaching a conclusion on the likelihood of confusion.")

Applicant contends that the combination of the words TALENT and JOB respectively with the word ASSURANCE creates a different commercial impression from the mark ASSURANCE in the cited registration. We disagree. We find that the marks would convey the same connotation with regard to the word ASSURANCE and the additional words in applicant's mark simply provide more information as to the nature of the services. As such, the overall commercial impression conveyed by the marks is similar. That is, TALENT ASSURANCE and JOB ASSURANCE are likely to be perceived as variations of registrant's

---

[9] Assurance: the act or action of assuring; the state of being assured, as security ...; something that inspires or tends to inspire confidence. Merriam-Webster Online Dictionary, www.merriam-webster.com, attached to App. Response (March 17, 2011).

ASSURANCE mark.[10]    While there are differences in appearance and sound between the marks, we find that the similarities outweigh the dissimilarities.

In conclusion, we find that because the services are legally identical, the trade channels and consumers are presumed to overlap, and the marks are similar, confusion is likely between applicant's marks TALENT ASSURANCE and JOB ASSURANCE, and the mark ASSURANCE in the cited registration.

**Decision**:  The refusal to register based on the requirement for a disclaimer of TALENT and JOB is affirmed in each application.[11]  The refusal to register based on a likelihood of confusion under Section 2(d) of the Trademark Act is affirmed in each application.

---

[10] We note that the record contains no evidence of other marks in the "temporary personnel services" field that incorporate the word ASSURANCE.

[11] Inasmuch as applicant has already provided the disclaimers in each application, in the event of an appeal, if the disclaimer requirement is affirmed but the Section 2(d) refusal reversed, the applications may proceed without further amendment.