THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
Jan. 28, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Midwest Gaming & Entertainment LLC

_____

Serial No. 85111552

_____

W. Dennis Drehkoff of Kelly & Krause, L.P. for Midwest
Gaming & Entertainment LLC.

Jeffery C. Coward, Trademark Examining Attorney, Law Office
106 (Mary I. Sparrow, Managing Attorney).

_____

Before Seeherman, Grendel and Gorowitz, Administrative
Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

Midwest Gaming & Entertainment LLC (applicant) seeks

registration on the Principal Register of the mark LOTUS

(in standard character form) for services identified in the

application, as amended, as "bar services located in a casino," in Class 43.[1]

The Trademark Examining Attorney has issued a final refusal to register applicant's mark under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d). Specifically, registration has been refused on the ground that applicant's mark, as applied to the services identified in the application, so resembles the mark LOTUS, previously-registered (in standard character form) on the Principal Register for, *inter alia*, Class 43 services identified in the registration as "providing banquet and social function facilities for special occasions; restaurant and bar services,"[2] as to be likely to cause confusion, to cause mistake, or to deceive.

Applicant has appealed the final refusal. After careful consideration of the evidence of record and the arguments of counsel, we affirm the refusal to register.

Our likelihood of confusion determination under Section 2(d) is a legal conclusion, based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue (the

---

[1] Serial No. 85111552, filed on August 19, 2010, based on applicant's asserted bona fide intent to use the mark in commerce. Trademark Act Section 1(b), 15 U.S.C. Section 1051(b).

[2] Reg. No. 3398472, issued on March 18, 2008.

*du Pont* factors). *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *In re Dixie Restaurants Inc.,* 105 F.3d 1405, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997). "In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services." *In re Max Capital Group Ltd.,* 93 USPQ2d 1243, 1244 (TTAB 2010); *see In re Chatham Int'l Inc.,* 380 F.3d 1340, 71 USPQ2d 1944, 1945 (Fed. Cir. 2004) (referring to these as "two key considerations"). *See also Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1357, 192 USPQ 24 (CCPA 1976).

Under the first *du Pont* factor, we determine the similarity or dissimilarity of applicant's mark and the cited registered mark when they are viewed in their entireties in terms of appearance, sound, connotation and commercial impression. In this case, we find that applicant's mark, LOTUS, and the cited registered mark, LOTUS, are identical in terms of appearance and sound. Likewise, the designation LOTUS is arbitrary as applied to restaurant and bar services, and it has the same connotation and creates the same commercial impression in both marks. In short, we find that the marks are identical. This finding under the first *du Pont* factor

strongly supports a conclusion that a likelihood of confusion exists.

Under the second *du Pont* factor, we determine the similarity or dissimilarity of the services as they are identified in applicant's application and in the cited registration, respectively. Applicant's services are identified in the application as "bar services located in a casino." The services identified in the cited registration include, in pertinent part, "restaurant and bar services."

Applicant has specifically limited its "bar services" to those "located in a casino." However, the "restaurant and bar services" identified in the cited registration are not limited in any way. We therefore must presume that they encompass all services of the nature and type identified, including "bar services located in a casino." *See Canadian Imperial Bank of Commerce, N.A. v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987). It is settled that "...it is the identification of [services] that controls, not what extrinsic evidence may show about the specific nature of the [services]. ... An applicant may not restrict the scope of the [services] covered in the cited registration by argument or extrinsic evidence." *In re La Peregrina Ltd*., 86 USPQ2d 1645 at 1647

(TTAB 2008); *see also In re Fisher Scientific Co.*, 440 Fed.2d 434, 169 USPQ 436, 437 (CCPA 1971).

For these reasons, we find, for purposes of determining the registrability of applicant's mark, that applicant's "bar services located in a casino" are similar to, and indeed encompassed by and thus legally identical to, the "restaurant and bar services" identified in the cited registration. This finding under the second *du Pont* factor supports a conclusion that a likelihood of confusion exists.[3]

---

[3] For the first time with its Reply Brief, applicant submitted new evidence consisting of copies of two sets of third-party registrations which purportedly show that in two instances the Office has issued a registration of a mark for casino-based restaurant and bar services despite an earlier registration of the same or a similar mark for non-casino-based restaurant and bar services. Applicant argues that this evidence suggests that the Office deems restaurant and bar services located in a casino to be dissimilar from restaurant and bar services which are not located in a casino. This evidence is untimely and therefore not part of the record for this case. *See* Trademark Rule 2.142(d), 37 C.F.R. Section 2.142(d). However, even if this evidence were properly of record, it would be of no probative value. In neither of the two situations involving the apparently overlapping registrations did the previous registration cover "restaurant and bar services" per se, like the cited registration in this case. Instead, each prior registration identified a specific type of restaurant which apparently was deemed to be sufficiently dissimilar to casino-based restaurant and bar services that the overlapping registrations could be issued. In any event, we are not bound by the apparent findings or decisions made by Trademark Examining Attorneys in examining these other applications. *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)(the Board must assess each application on the record of public perception in that application and there is little persuasive value in other registrations).

Under the third *du Pont* factor, we determine the similarity or dissimilarity of the trade channels in which, and the classes of purchasers to whom, the respective services are or would be marketed. Because there are no limitations or restrictions as to trade channels or classes of purchasers in the registrant's pertinent identification of services, i.e., "restaurant and bar services," we presume that those services are or would be marketed in all normal trade channels for such services and to all normal classes of purchasers of such services. *See, e.g., Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012); *In re Elbaum*, 211 USPQ 639 (TTAB 1981).

Moreover, although applicant has limited its trade channels to casinos and its purchasers presumably to casino patrons, registrant's unrestricted registration encompasses bar services rendered in a casino setting to casino patrons. *Cf*. *In re Hartz Hotel Services Inc.,* 102 USPQ2d 1150, 1152 (TTAB 2012)(where services in the application are legally identical to the services in the cited registration, there is a presumption that the trade channels and classes of purchasers likewise are legally identical); *In re Smith and Mehaffey*, 31 USPQ2d 1531 (TTAB 1994)(same).

6

We acknowledge that if, as we must presume, the registrant were to render its restaurant and bar services in a casino to casino patrons, it is unlikely that it would be rendering such services in the same casino(s) in which applicant is rendering its bar services.  However, the relevant class of purchasers, i.e., casino patrons, would be the same in both cases, and we must assume that they could encounter applicant's and the registrant's services in the different casinos.  We find that they would be likely to be confused if they were to encounter "bar services" and "restaurant and bar services," respectively, both offered under the mark LOTUS, in those different casinos.

In short, we find that the trade channels and classes of purchasers for applicant's services and the services in the cited registration are similar and indeed legally identical.  This finding under the third *du Pont* factor supports a conclusion that confusion is likely.

Further with respect to the second and third *du Pont* factors, we note that the registrant's Class 43 services as identified in the cited registration are "providing banquet and social function facilities for special occasions; restaurant and bar services."  Applicant argues that our likelihood of confusion determination should not be based

solely on the services identified as "restaurant and bar services," but that we instead must consider the registrant's services in the context of the Class 43 identification of services in its entirety.

In this regard, applicant argues that the registrant's "restaurant and bar services," when read in the context of the entire Class 43 identification of services, must be limited to a specific type of such services and to a specific trade channel and class of purchasers, i.e., to restaurant and bar services provided in connection with "providing banquet and social function facilities for special occasions." Applicant argues that this restriction to the registrant's services, trade channels and purchasers, when combined with applicant's restriction of its own trade channels and purchasers to casinos and casino patrons, distinguishes applicant's and registrant's services, trade channels and purchasers, and suffices to eliminate any likelihood of confusion among purchasers of the respective services.

Applicant's argument is unpersuasive.

In the cited registration's identification of services, the "providing banquet and social function facilities for special occasions" are services separated by a semicolon from the "restaurant and bar services." Under

8

standard examination practice, a semicolon is used to separate distinct categories of goods or services.[4]  We find that here, the semicolon separates the registrant's "restaurant and bar services" into a discrete category of services which is not connected to nor dependent on the "providing banquet and social function facilities for special occasions" services set out on the other side of the semicolon.  We further find that the registrant's "restaurant and bar services," as separately set out in the

---

[4] See Trademark Manual of Examining Procedure (TMEP) (October 2012) at Section 1402.01(a), "General Guidelines for Acceptable Identifications of Goods or Services":

> Semicolons should generally be used to separate distinct categories of goods or services within a single class.  For example, "cleaners, namely, glass cleaners, oven cleaners, and carpet cleaners; deodorizers for pets" is an acceptable identification in Class 3.  In this example, the word "cleaners" names the category covering "glass cleaners, oven cleaners, and carpet cleaners."  The semicolon prior to "deodorizers for pets" indicates that the deodorizers are a separate category of goods from the cleaners.

We also note that Fowler's Modern English Usage (rev. 3rd ed.) at page 699 (submitted by applicant itself with its reply brief and of which we take judicial notice) states that:  "The semicolon *separates two or more clauses which are of more or less equal importance* and are linked as a pair or series…," and that "…the semicolon is a useful device for *separating a list of items* set out in consecutive (as distinct from columnar) form…".  (Emphasis added.)  Thus, this standard usage authority further supports the conclusion that, as the Office's practice as set forth in the TMEP provides, the semicolon in the cited registration's identification of services serves to separate "restaurant and bar services" and "providing banquet and social function facilities for special occasions" into two discrete categories of services.

identification of services by means of the semicolon, stand alone and independently as a basis for our likelihood of confusion findings under the second and third *du Pont* factors.

Although without explicitly stating its argument in such terms, applicant essentially appears to be arguing that the "restaurant and bar services" identified in the cited registration should be read *in pari materia* with the "providing banquet and social function facilities for special occasions." This argument is unavailing. *See In re Thor Tech Inc.,* 90 USPQ2d 1634 (TTAB 2009).

In *Thor Tech*, the applicant's goods were identified as "recreational vehicles, namely travel trailers and fifth wheels." Registration was refused under Section 2(d) based on a cited registration with goods identified as "trailers, dump trailers, and truck bodies." The applicant argued that the "trailers" in the cited registration should not be interpreted as encompassing recreational vehicle-type trailers. *Id*. at 1637. Rather, the applicant argued, "[t]he term 'trailers' in the cited registration should be read *in pari materia* with the associated goods listed in the registration," i.e., "dump trailers, truck bodies," such that the identification of goods in the cited registration would in effect be construed as "industrial

10

and commercial trailers sold to professional purchasers, dump trailers and truck bodies." *Id.* The Board rejected that argument, finding instead that the broadly-identified "trailers" must be construed as encompassing recreational vehicle-type trailers like the applicant's, and not merely industrial and commercial trailers.

Similarly in this case, we will not consider the broadly-identified "restaurant and bar services" in the cited registration *in pari materia* with, or to be limited by, the other wording in the identification of services, i.e., "providing banquet and social function facilities for special occasions." Indeed, the Board's finding in *Thor Tech* applies *a fortiori* here, where the registrant's broadly-identified "restaurant and bar services" are actually separated by a semicolon from the other wording in the identification of services, thus rendering them a separate category of services and an independent basis for the Section 2(d) refusal.

In short, we find that the "restaurant and bar services" identified in the cited registration stand alone as the basis for our analysis under the second and third *du Pont* factors. As discussed above, those "restaurant and bar services" encompass and are thus legally identical to applicant's "bar services located in a casino," and the

trade channels and purchasers for the respective services likewise are legally identical.

Under the fourth *du Pont* factor, we consider the conditions under which the services are or would be purchased, including purchaser sophistication. We find that the relevant purchasers of restaurant and bar services, including bar services located in a casino, would include ordinary consumers who would exercise only a normal degree of care in purchasing the services. This finding under the fourth *du Pont* factor supports a conclusion that confusion is likely. At best, this factor is neutral; it certainly does not weigh in applicant's favor. Applicant's arguments to the contrary are not persuasive.

Applicant has presented evidence consisting of TESS printouts of dozens of third-party registrations of numerous JACK'S-formative marks, all registered for restaurant and/or bar services. (Applicant's January 10, 2012 Request for Reconsideration.) Examples of these marks include CAPTAIN JACK'S, MOUNTAIN JACK'S, CALICO JACK'S, OMAHA JACK'S and FAT JACK'S BBQ. Applicant argues that these registrations establish that consumers are able to distinguish the source of restaurant and/or bar services even if sold under similar marks, and that consumers thus will be able to distinguish applicant's and the

12

registrant's services in our case even if sold under identical LOTUS marks.

This argument is unpersuasive. Unlike the apparently dozens of JACK'S-formative marks on the Register, the registrant's LOTUS mark is arbitrary and strong on this record. For that reason, we find that applicant's evidence of numerous third-party JACK'S-formative registrations is of little or no probative value in this case involving the mark LOTUS for restaurant and bar services.[5]

In summary, we find that applicant's mark and the cited registered mark are identical, i.e., LOTUS. We also find that, for purposes of determining the registrability of applicant's mark, applicant's "bar services located in a casino" are encompassed by and thus deemed to be legally identical to the broadly-identified "restaurant and bar services" set forth in the cited registration. We also find that the respective trade channels and purchasers likewise are legally identical. We find that the relevant

---

[5] Moreover, it is settled that the mere existence of third-party registrations is not evidence that the registered marks are actually in use or that the public is familiar with them. *See, e.g., In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1259 (Fed. Cir. 2010). We add that even if applicant had submitted evidence of actual use of these third-party JACK'S-formative marks, such evidence would be entitled to little or no probative value in this case, which involves the arbitrary and undiluted mark LOTUS.

13

purchasers include ordinary consumers who would exercise only a normal degree of care in purchasing these services.

Based on these findings, and for all of the reasons discussed above, we conclude that a likelihood of confusion exists. We have considered all of applicant's arguments to the contrary but we are not persuaded by them.

**Decision:  The refusal to register is affirmed.**