# United States Court of Appeals
# for the Federal Circuit

———————————

**SWAGWAY, LLC,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**SEGWAY, INC., DEKA PRODUCTS LIMITED PARTNERSHIP, NINEBOT (TIANJIN) TECHNOLOGY CO., LTD.,**
*Intervenors*

———————————

2018-1672

———————————

Appeal from the United States International Trade Commission in Investigation Nos. 337-TA-1007, 337-TA-1021.

———————————

Decided: May 9, 2019

———————————

LAURENCE M. SANDELL, Mei & Mark LLP, Washington, DC, argued for appellant. Also represented by LEI MEI, ROBERT HALL, PHILIP ANDREW RILEY.

MICHAEL LIBERMAN, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by DOMINIC

L. BIANCHI, WAYNE W. HERRINGTON, PANYIN HUGHES.

    NICHOLAS A. BROWN, Greenberg Traurig LLP, San Francisco, CA, argued for intervenors. Also represented by JONATHAN D. BALL, New York, NY.

                        _____

    Before DYK, MAYER, and CLEVENGER, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

    Swagway, LLC appeals the Final Determination of the International Trade Commission ("the Commission"), which found that Swagway violated 19 U.S.C. § 1337 ("Section 337"). Because we conclude that the Commission did not err in its determination, we affirm.

## BACKGROUND

    Segway, Inc., DEKA Products Limited Partnership, and Ninebot (Tianjin) Technology Co., Ltd. (collectively, "Segway") filed a Complaint with the Commission on May 18, 2016, alleging violations of Section 337 based on infringement of six patents not at issue in the current appeal, and two trademarks: U.S. Trademark Registration Nos. 2,727,948 ("the '948 mark") and 2,769,942 ("the '942 mark").

    Segway owns both the '948 and '942 marks. The '948 mark is the non-stylized SEGWAY mark, which covers "motorized, self-propelled, wheeled personal mobility devices, namely, wheelchairs, scooters, utility carts, and chariots." J.A. 220. The '942 mark is the stylized version of the SEGWAY mark covering the same goods as its non-stylized counterpart. The Complaint filed with the Commission alleged that Swagway's self-balancing hoverboard products, marketed under the names SWAGWAY X1 and X2, as well as SWAGTRON T1 and T3, infringed Segway's marks.

On August 16, 2016, Segway filed another Complaint with the Commission alleging infringement of the same patents and trademarks, but naming additional respondents. The Commission instituted investigations based on both complaints, consolidated them, and assigned an administrative law judge ("ALJ").

On March 21, 2017, Swagway moved for partial termination of the investigation regarding the trademark infringement allegations on the basis of a consent order stipulation. Swagway amended its consent order stipulation and the corresponding proposed consent order on two separate occasions. The proposed consent order stipulated, among other things, that Swagway would not sell or import "SWAGWAY-branded personal transporter products as well as all components thereof, packaging and manuals therefor." J.A. 560. Segway opposed the stipulation and proposed consent order based on the fact that it addressed only a subset of the claims and products at issue in the investigation, and because, according to Segway, it would allow Swagway to relitigate the issue of trademark infringement with respect to the products covered by the order.

During the investigation, the Commission granted Segway's motions to terminate the investigation as to four of the six patents. By the time the ALJ held a hearing in the investigation, only U.S. Patent Nos. 6,302,230 ("the '230 patent") and 7,275,607 ("the '607 patent"), and the '942 and '948 trademarks remained.

The ALJ scheduled a hearing in the consolidated investigation for April 18, 2017. Prior to the hearing, the ALJ held a prehearing conference during which counsel for Swagway inquired about the pending motion for consent order on which it had yet to receive a ruling. The ALJ indicated that, because of the number of versions of the consent order and the amount of briefing, "it certainly [wasn't]

going to be ruled on . . . before the end of the hearing." J.A. 3034.

After the hearing, the ALJ issued an Initial Determination ("ID"), finding that the respondents accused products did not infringe the asserted claims of the '230 and '607 patents, and that the technical prong of the domestic industry requirement was not satisfied for those patents. The ID also found that Swagway's use of the SWAGWAY designation, but not the SWAGTRON designation, infringed the '942 and '948 trademarks. The ALJ's trademark infringement determination was based on its analysis of six "likelihood of confusion" factors: (1) evidence of actual consumer confusion; (2) the degree of similarity in appearance and pronunciation between the marks; (3) the intent of the actor in adopting the designation; (4) the relation in use and manner of marketing between the products bearing the mark or designation; (5) the degree of care exercised by consumers of the marked or designated products; and (6) the strength of the mark.

As to the first factor, the ALJ found that there was "overwhelming evidence" of actual confusion between the SWAGWAY designation and the Segway marks. J.A. 230. But the ALJ found only de minimis actual confusion between the SWAGTRON designation and the Segway marks.

The ALJ found that the second factor weighed in favor of finding a likelihood of confusion because the Segway marks and SWAGWAY designation looked alike and had similar pronunciations. The ALJ found the opposite for the SWAGTRON designation.

The ALJ determined that Swagway's founder did not intend to infringe Segway's trademarks based on his testimony that he independently derived the SWAGWAY designation, and his testimony that he changed the designation to SWAGTRON after receiving a cease-and-desist letter from Segway's counsel. The ALJ did not

definitively state whether the intent of the actor factor weighed in favor of or against a likelihood of confusion.

As to the fourth factor, the ALJ found that Segway's and Swagway's products are sold on the same websites and in the same stores. Thus, the products exist in a common commercial channel. The ALJ determined, however, that the goods offered in connection with the asserted trademarks are significantly more expensive than the SWAGWAY and SWAGTRON products. The ALJ therefore found that the fourth factor weighed against a finding that the SWAGWAY and SWAGTRON designations were likely to cause consumer confusion.

The ALJ did not make a determination on the fifth factor because neither party presented evidence going to the degree of care exercised by consumers in purchasing products associated with the asserted trademarks or the SWAGWAY and SWAGTRON designations.

The ALJ found that the conceptual and commercial strength of the asserted trademarks was high due to the fact that the term "Segway" was coined "for the sole purpose of functioning as a trademark" and because consumers strongly associated the SEGWAY brand with the products. J.A. 235-37.

The ALJ's ID did not mention Swagway's motion for termination based on its consent order stipulation. The ALJ stated in a footnote to its ID that "[a]ny pending motion that has not been adjudicated is denied, unless otherwise noted." J.A. 62 n.2. The ID said nothing more about Swagway's motion for termination based on a consent order stipulation.

Swagway subsequently filed a petition for review of the ALJ's ID. As relevant here, Swagway appealed the denial of its consent order motion and the ID's finding that the SWAGWAY mark infringed the '942 and '948 trademarks.

The Commission issued a notice of its determination to review the ID's finding that actual confusion existed with regard to the SWAGWAY mark. The Commission determined not to review the ALJ's denial of Swagway's consent order motion.

The Commission issued an opinion reversing the ALJ's determination on the existence of actual confusion because the incidents of actual confusion were small as compared to the volume of sales of SWAGWAY-branded products, and Segway failed to rebut Swagway's argument and supporting evidence that at least some of the proffered actual confusion evidence was unreliable. The Commission therefore modified the ID, finding that evidence of actual confusion "d[id] not weigh in favor of likelihood of confusion." J.A. 38. Nonetheless, the Commission agreed with the ALJ's likelihood-of-confusion determination and its trademark infringement determination because the "[e]vidence supporting the other factors considered by the ID, including the degree of similarity between the two marks in appearance, the pronunciation of the words, and the strength of the SEGWAY marks strongly support[ed] the ID's finding of infringement." *Id.*

Swagway appeals the Commission's decision finding that Swagway infringed the '942 and '948 marks. Swagway also appeals the Commission's failure to enter the proposed consent order. We have jurisdiction over Swagway's appeal pursuant to 28 U.S.C. § 1295(a)(6).

DISCUSSION

I. Standard of Review

We review the ITC's legal determinations *de novo* and its factual findings for substantial evidence. *Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 1115 (Fed. Cir. 2018).

The Commission's ultimate likelihood-of-confusion determination is a legal determination that we review *de*

*novo. Id.*; *In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1322 (Fed. Cir. 2017)("Likelihood of confusion is a question of law based on underlying findings of fact."). We also accord *de novo* review to the weight given to each likelihood-of-confusion factor. *Cf. Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1322 (Fed. Cir. 2014) (reviewing the weight given to the similarity-of-the-marks factor for legal error). The likelihood-of-confusion determination is based upon factual underpinnings that this Court reviews for substantial evidence. *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010). For example, the question of the similarity between two marks and the relatedness of goods are factual determinations. *See Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1241 (Fed. Cir. 2004).

## II. Trademark Infringement

To prove trademark infringement, the owner of the asserted trademark must demonstrate that consumers would likely confuse the alleged infringer's mark with the asserted mark. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1330 (Fed. Cir. 1999). Whether a likelihood of confusion exists is determined using the factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973). *See In re Guild Mortg. Co.*, 912 F.3d 1376, 1378–79 (Fed. Cir. 2019).[1] The *DuPont* factors are:

---

1 Our predecessor court articulated the *DuPont* framework in assessing likelihood of confusion for purposes of registration of trademarks. Recently, the Supreme Court ruled that "likelihood of confusion for purposes of registration is the same standard as likelihood of confusion for purposes of infringement." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1307 (2015). The present matter comes to us from the International Trade Commission's ruling under 19 U.S.C. § 1337 relating to

(1)  The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2)  The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3)  The similarity or dissimilarity of established, likely-to-continue trade channels.

(4)  The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing.

(5)  The fame of the prior mark (sales, advertising, length of use).

(6)  The number and nature of similar marks in use on similar goods.

(7)  The nature and extent of any actual confusion.

(8)  The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.

(9)  The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).

(10)  The market interface between applicant and the owner of a prior mark ....

(11)  The extent to which applicant has a right to exclude others from use of its mark on its goods.

---

trademark infringement.   Accordingly, we apply our *DuPont* framework to the likelihood of confusion issue in reviewing the Commission's infringement determination.

(12) The extent of potential confusion, i.e., whether de minimis or substantial.

(13) Any other established fact probative of the effect of use.

*Id.* at 1379.

In this case, the ALJ considered only six factors that are nearly identical to those outlined in *DuPont*: (1) actual confusion; (2) the intent of the actor in adopting the designation; (3) the relation in use and manner of marketing between the goods and services marked by the actor and those by the other; (4) the degree of similarity between the designation and the trademark; (5) the strength of the mark; and (6) the degree of care likely to be exercised by purchasers. The Commission need not consider every *DuPont* factor. *Shen Mfg.*, 393 F.3d at 1241. It is required to consider only those factors which are supported by evidence in the record. *Id.* Moreover, neither party challenges the Commissions' choice of *DuPont* factors.

Swagway argues that the Commission accorded the wrong weight to the actual confusion factor. According to Swagway, lack of actual confusion evidence is especially probative in cases such as this where the products bearing the registered trademarked and the allegedly infringing products are sold concurrently over a substantial period of time. Swagway contends, therefore, that the Commission should have found the lack of actual confusion essentially dispositive in this case.

First, while the *DuPont* factors recognize the relevance of concurrent use without evidence of actual confusion, we have never indicated that the concurrent use factor always bars a likelihood-of-confusion finding. Instead, we have found that "[s]uch evidence weighs against a likelihood of confusion, but must then be balanced against the other evidence of record." *Guild*, 912 F.3d at 1381.

Second, the Commission never determined that the lack of actual confusion evidence cannot in any circumstance weigh against a likelihood-of-confusion finding. Instead, it found that the lack of actual confusion "d[id] not weigh in favor of a finding of a likelihood of confusion." J.A. 38. Swagway does not argue on appeal that its evidence presented below warranted a finding of long-term, concurrent use in the same channels of trade. *See Guild*, 912 F.3d at 1381 (holding that the period during which two marks are used concurrently in similar geographic markets and channels of trade is "relevant when assessing whether the absence of actual confusion is indicative of the likelihood of confusion"). Thus, it failed to establish that the absence of actual confusion evidence should even weigh against, let alone strongly against, a likelihood-of-confusion finding under our precedent.

Swagway also argues more generally that, after reversing the ALJ's determination with regard to actual confusion, the Commission failed to "properly re-weigh the likelihood-of-confusion factors." Appellant's Br. at 25. The Commission did, however, reweigh the factors and found that the "[e]vidence supporting the other factors considered by the ID, including the degree of similarity between the two marks in appearance, the pronunciation of the words, and the strength of the SEGWAY marks strongly support the ID's finding of infringement." J.A. 38. To the extent that Swagway argues that the Commission erred in its determination because "only two of the six factors considered . . . favor a likelihood-of-confusion finding," while "three factors . . . weigh against such a finding," that argument is unpersuasive as a matter of both fact and law. Appellant's Br. at 26.

The ALJ never stated that the "intent of the actor" factor weighed in favor of or against a likelihood-of-confusion finding. It stated only that there appeared "to be concrete actions taken by [Swagway's founder] Mr. Zhu that lend credibility to his testimony regarding his lack of intent to

infringe the Segway trademarks." J.A. 232. The Commission also did not find that the lack of actual confusion evidence weighed against a likelihood-of-confusion finding. Instead, it found that the lack of such evidence did not weigh in favor of such a finding. There was, therefore, only one factor, "relation in use and manner of marketing," that the Commission found to weigh against a likelihood of confusion between the asserted trademarks and the SWAGWAY designation.

Moreover, the likelihood-of-confusion analysis cannot be reduced to a simple tally of the factors. The factors are accorded different weights in different circumstances. *See M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 1382 (Fed. Cir. 2006) (noting that it is necessary to consider only the *DuPont* factors relevant to and of record in a specific case, and that any one factor may control a particular case). Our precedent supports the Commission's finding that the strength of the asserted trademark, along with the comparable similarity of the asserted and allegedly infringing marks, can weigh strongly in favor of a likelihood of confusion. *See Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1336 (Fed. Cir. 2001) ("While it must consider each factor for which it has evidence, the Board may focus its analysis on dispositive factors, such as similarity of the marks and relatedness of the goods."); *I.AM.Symbolic*, 866 F.3d at 1324 (finding that the similarity of the marks weighed heavily in favor of a likelihood of confusion); *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 352 (Fed. Cir. 1992) ("The fifth [D]*uPont* factor . . . plays a dominant role in cases featuring a famous or strong mark."); *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 675 (Fed. Cir. 1984) (holding that "[w]hen an opposer's trademark is a strong, famous mark, it can never be of little consequence" in a likelihood-of-confusion analysis (internal quotation marks omitted).

Swagway also takes issue with the Commission's failure to weigh Segway's lack of survey evidence against a

likelihood-of-confusion finding. According to Swagway, Segway had the financial means to conduct surveys, and thus, its failure to do so should create "an adverse inference that such a survey would not have shown a likelihood of confusion with respect to the asserted trademarks." Appellant's Br. 27. But the adverse inference Swagway encourages us to adopt belies our precedent. Consumer survey evidence is not required to show a likelihood of confusion. *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1054 (Fed. Cir. 2012). We have also previously declined to infer that the lack of survey evidence indicates that such evidence would be harmful to the party alleging infringement. *Id.* The Commission therefore did not err in according no weight to Segway's lack of survey evidence.

## III. Consent Order Motion

In addition to its arguments on the merits of the Commission's determination, Swagway also argues that the Commission erred procedurally by failing to provide any basis for its denial of Swagway's consent order motion. Swagway asks this Court to reverse the Commission's denial of its motion and remand with a direction to the Commission to enter the proposed consent order. During oral argument, a question arose regarding the possible mootness of that issue.

Swagway's proposed consent order stipulated and agreed that Swagway would not sell for importation, import, or sell after importation into the United States products sold under the SWAGWAY mark, "that is, SWAGWAY-branded personal transporter products as well as all components thereof, packaging and manuals therefor." J.A. 560. The Commission determined that the SWAGWAY mark infringed the '948 and '942 marks, and therefore entered enforcement and cease-and-desist orders prohibiting importation and sale of "SWAGWAY-branded personal transporters, components thereof, and packaging

and manuals thereof." J.A. 7, 12. Comparatively, there appeared to be no difference, as a practical matter, between the orders entered by the Commission and Swagway's proposed consent order. Either way, the SWAGWAY-branded personal transporters could not be imported into or sold within the United States.

Swagway contended at oral argument that the difference between its proposed consent order and the orders issued by the Commission was the preclusive effect it believed would be afforded to the Commission's final decision and its resulting orders. Swagway, therefore, sought entry of its proposed consent order to avoid issue preclusion in the co-pending case in the United States District Court for the District of Delaware, which is stayed pending resolution of the current appeal. *Segway, Inc. v. Swagway, LLC*, No. 1:15-cv-01198-SLR-SRF (D. Del.).

We have previously determined that "Congress did not intend decisions of the ITC on patent issues to have preclusive effect." *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996); *see Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987) ("[O]ur appellate treatment of decisions of the Commission does not estop fresh consideration by other tribunals."). We see no reason to differentiate between the effect of the Commission's patent-based decisions and the Commission's decisions regarding trademarks. Because we hold that the Commission's trademark decisions, like its patent decisions, do not have preclusive effect, we need not reach Swagway's procedural arguments regarding its consent order motion.[2]

---

[2] Oral Arg. at 35:04–35:09, 34:31–40 (agreeing to withdraw its argument regarding its consent order motion if this Court held that the Commission's trademark determinations are not entitled to preclusive effect).

CONCLUSION

For the reasons above, we affirm the Commission's determination that the SWAGWAY-branded personal-transporter products infringe the '948 and '942 marks. We also conclude that the Commission's decisions pertaining to trademark infringement or validity are not entitled to preclusive effect in the district courts. Based on Swagway's concession at oral argument, we therefore decline to reach Swagway's remaining arguments regarding its consent order motion.

**AFFIRMED**

COSTS

No costs.