# United States Court of Appeals
# for the Federal Circuit

---

**SWAGWAY, LLC,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**SEGWAY, INC., DEKA PRODUCTS LIMITED
PARTNERSHIP, NINEBOT (TIANJIN)
TECHNOLOGY CO., LTD.,**
*Intervenors*

---

2018-1672

---

Appeal from the United States International Trade
Commission in Investigation Nos. 337-TA-1007, 337-TA-
1021.

---

OPINION ISSUED: May 9, 2019
OPINION MODIFIED: August 14, 2019[*]

---

---

[*] This opinion has been modified and reissued following a combined petition for panel rehearing and rehearing en banc filed by Intervenors.

LAURENCE M. SANDELL, Mei & Mark LLP, Washington, DC, argued for appellant. Also represented by LEI MEI, ROBERT HALL, PHILIP ANDREW RILEY.

MICHAEL LIBERMAN, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON, PANYIN HUGHES, SIDNEY A. ROSENZWEIG.

NICHOLAS A. BROWN, Greenberg Traurig LLP, San Francisco, CA, argued for intervenors. Also represented by JONATHAN D. BALL, New York, NY.

————————————

Before DYK, MAYER, and CLEVENGER, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

This appeal was previously decided by our opinion dated May 9, 2019. *Swagway, LLC v. Int'l Trade Comm'n*, 923 F.3d 1349 (Fed. Cir. 2019). Intervenors, Segway, Inc., DEKA Products Ltd. Partnership, and Ninebot (Tianjin) Technology Co., Ltd. (collectively, "Segway") thereafter filed a combined petition for panel rehearing and rehearing en banc which questioned Part III of our original decision. In Part III of our decision, we accepted Swagway's conditional withdrawal of its argument regarding its consent order motion because we held that the International Trade Commission's ("the Commission") trademark determinations are not entitled to preclusive effect.[1] The panel

---

[1] Oral Arg. at 35:04–35:09, 34:31–40 (agreeing to withdraw its argument regarding its consent order motion if this Court held that the Commission's trademark determinations are not entitled to preclusive effect).

invited a response from the Commission and Swagway, LLC ("Swagway").

After considering Segway's petition and the Commission's and Swagway's responses, we grant Segway's petition for panel rehearing to the extent that we vacate Part III of our original decision on the issue of the preclusive effect of the Commission's trademark decisions under 19 U.S.C. § 1337 ("§ 337"). The court's opinion is modified accordingly. The remaining portions of the opinion are unchanged.

Swagway, LLC appeals the Final Determination of the International Trade Commission, which found that Swagway violated 19 U.S.C. § 1337. Because we conclude that the Commission did not err in its determination, we affirm.

### BACKGROUND

Segway filed a Complaint with the Commission on May 18, 2016, alleging violations of § 337 based on infringement of six patents not at issue in the current appeal, and two trademarks: U.S. Trademark Registration Nos. 2,727,948 ("the '948 mark") and 2,769,942 ("the '942 mark").

Segway owns both the '948 and '942 marks. The '948 mark is the non-stylized SEGWAY mark, which covers "motorized, self-propelled, wheeled personal mobility devices, namely, wheelchairs, scooters, utility carts, and chariots." J.A. 220. The '942 mark is the stylized version of the SEGWAY mark covering the same goods as its non-stylized counterpart. The Complaint filed with the Commission alleged that Swagway's self-balancing hoverboard products, marketed under the names SWAGWAY X1 and X2, as well as SWAGTRON T1 and T3, infringed Segway's marks.

On August 16, 2016, Segway filed another Complaint with the Commission alleging infringement of the same patents and trademarks, but naming additional respondents. The Commission instituted investigations based on both

complaints, consolidated them, and assigned an administrative law judge ("ALJ").

On March 21, 2017, Swagway moved for partial termination of the investigation regarding the trademark infringement allegations on the basis of a consent order stipulation. Swagway amended its consent order stipulation and the corresponding proposed consent order on two separate occasions. The proposed consent order stipulated, among other things, that Swagway would not sell or import "SWAGWAY-branded personal transporter products as well as all components thereof, packaging and manuals therefor." J.A. 560. Segway opposed the stipulation and proposed consent order based on the fact that it addressed only a subset of the claims and products at issue in the investigation, and because, according to Segway, it would allow Swagway to relitigate the issue of trademark infringement with respect to the products covered by the order.

During the investigation, the Commission granted Segway's motions to terminate the investigation as to four of the six patents. By the time the ALJ held a hearing in the investigation, only U.S. Patent Nos. 6,302,230 ("the '230 patent") and 7,275,607 ("the '607 patent"), and the '942 and '948 trademarks remained.

The ALJ scheduled a hearing in the consolidated investigation for April 18, 2017. Prior to the hearing, the ALJ held a prehearing conference during which counsel for Swagway inquired about the pending motion for consent order on which it had yet to receive a ruling. The ALJ indicated that, because of the number of versions of the consent order and the amount of briefing, "it certainly [wasn't] going to be ruled on . . . before the end of the hearing." J.A. 3034.

After the hearing, the ALJ issued a Final Initial Determination ("ID"), finding that the respondents' accused products did not infringe the asserted claims of the '230

and '607 patents, and that the technical prong of the domestic industry requirement was not satisfied for those patents. The ID also found that Swagway's use of the SWAGWAY designation, but not the SWAGTRON designation, infringed the '942 and '948 trademarks. The ALJ's trademark infringement determination was based on its analysis of six "likelihood of confusion" factors: (1) evidence of actual consumer confusion; (2) the degree of similarity in appearance and pronunciation between the marks; (3) the intent of the actor in adopting the designation; (4) the relation in use and manner of marketing between the products bearing the mark or designation; (5) the degree of care exercised by consumers of the marked or designated products; and (6) the strength of the mark.

As to the first factor, the ALJ found that there was "overwhelming evidence" of actual confusion between the SWAGWAY designation and the Segway marks. J.A. 230. But the ALJ found only de minimis actual confusion between the SWAGTRON designation and the Segway marks.

The ALJ found that the second factor weighed in favor of finding a likelihood of confusion because the Segway marks and SWAGWAY designation looked alike and had similar pronunciations. The ALJ found the opposite for the SWAGTRON designation.

The ALJ determined that Swagway's founder did not intend to infringe Segway's trademarks based on his testimony that he independently derived the SWAGWAY designation, and his testimony that he changed the designation to SWAGTRON after receiving a cease-and-desist letter from Segway's counsel. The ALJ did not definitively state whether the intent of the actor factor weighed in favor of or against a likelihood of confusion.

As to the fourth factor, the ALJ found that Segway's and Swagway's products are sold on the same websites and in the same stores. Thus, the products exist in a common

commercial channel.  The ALJ determined, however, that the goods offered in connection with the asserted trademarks are significantly more expensive than the SWAGWAY and SWAGTRON products.  The ALJ therefore found that the fourth factor weighed against a finding that the SWAGWAY and SWAGTRON designations were likely to cause consumer confusion.

The ALJ did not make a determination on the fifth factor because neither party presented evidence going to the degree of care exercised by consumers in purchasing products associated with the asserted trademarks or the SWAGWAY and SWAGTRON designations.

The ALJ found that the conceptual and commercial strength of the asserted trademarks was high due to the fact that the term "Segway" was coined "for the sole purpose of functioning as a trademark" and because consumers strongly associated the SEGWAY brand with the products.  J.A. 235-37.

The ALJ's ID did not mention Swagway's motion for termination based on its consent order stipulation.  The ALJ stated in a footnote to its ID that "[a]ny pending motion that has not been adjudicated is denied, unless otherwise noted." J.A. 62 n.2. The ID said nothing more about Swagway's motion for termination based on a consent order stipulation.

Swagway subsequently filed a petition for review of the ALJ's ID.  As relevant here, Swagway appealed the denial of its consent order motion and the ID's finding that the SWAGWAY mark infringed the '942 and '948 trademarks.

The Commission issued a notice of its determination to review the ID's finding that actual confusion existed with regard to the SWAGWAY mark.  The Commission determined not to review the ALJ's denial of Swagway's consent order motion.

The Commission issued an opinion reversing the ALJ's determination on the existence of actual confusion because the incidents of actual confusion were small as compared to the volume of sales of SWAGWAY-branded products, and Segway failed to rebut Swagway's argument and supporting evidence that at least some of the proffered actual confusion evidence was unreliable. The Commission therefore modified the ID, finding that evidence of actual confusion "d[id] not weigh in favor of likelihood of confusion." J.A. 38. Nonetheless, the Commission agreed with the ALJ's likelihood-of-confusion determination and its trademark infringement determination because the "[e]vidence supporting the other factors considered by the ID, including the degree of similarity between the two marks in appearance, the pronunciation of the words, and the strength of the SEGWAY marks strongly support[ed] the ID's finding of infringement." *Id.*

Swagway appeals the Commission's decision finding that Swagway infringed the '942 and '948 marks. Swagway also appeals the Commission's failure to enter the proposed consent order. We have jurisdiction over Swagway's appeal pursuant to 28 U.S.C. § 1295(a)(6).

DISCUSSION

I. Standard of Review

We review the ITC's legal determinations *de novo* and its factual findings for substantial evidence. *Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 1115 (Fed. Cir. 2018).

The Commission's ultimate likelihood-of-confusion determination is a legal determination that we review *de novo*. *Id.*; *In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1322 (Fed. Cir. 2017) ("Likelihood of confusion is a question of law based on underlying findings of fact."). We also accord *de novo* review to the weight given to each likelihood-of-confusion factor. *Cf. Stone Lion Capital Partners, L.P. v.*

*Lion Capital LLP*, 746 F.3d 1317, 1322 (Fed. Cir. 2014) (reviewing the weight given to the similarity-of-the-marks factor for legal error). The likelihood-of-confusion determination is based upon factual underpinnings that this Court reviews for substantial evidence. *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010). For example, the question of the similarity between two marks and the relatedness of goods are factual determinations. *See Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1241 (Fed. Cir. 2004).

## II. Trademark Infringement

To prove trademark infringement, the owner of the asserted trademark must demonstrate that consumers would likely confuse the alleged infringer's mark with the asserted mark. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1330 (Fed. Cir. 1999). Whether a likelihood of confusion exists is determined using the factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973). *See In re Guild Mortg. Co.*, 912 F.3d 1376, 1378–79 (Fed. Cir. 2019).[2] The *DuPont* factors are:

---

[2] Our predecessor court articulated the *DuPont* framework in assessing likelihood of confusion for purposes of registration of trademarks. Recently, the Supreme Court ruled that "likelihood of confusion for purposes of registration is the same standard as likelihood of confusion for purposes of infringement." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1307 (2015). The present matter comes to us from the International Trade Commission's ruling under 19 U.S.C. § 1337 relating to trademark infringement. Accordingly, we apply our *DuPont* framework to the likelihood of confusion issue in reviewing the Commission's infringement determination.

(1)  The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2)  The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3)  The similarity or dissimilarity of established, likely-to-continue trade channels.

(4)  The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing.

(5)  The fame of the prior mark (sales, advertising, length of use).

(6)  The number and nature of similar marks in use on similar goods.

(7)  The nature and extent of any actual confusion.

(8)  The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.

(9)  The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).

(10)  The market interface between applicant and the owner of a prior mark ....

(11)  The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12)  The extent of potential confusion, i.e., whether de minimis or substantial.

(13)  Any other established fact probative of the effect of use.

*Id.* at 1379.

In this case, the ALJ considered only six factors that are nearly identical to those outlined in *DuPont*: (1) actual confusion; (2) the intent of the actor in adopting the designation; (3) the relation in use and manner of marketing between the goods and services marked by the actor and those by the other; (4) the degree of similarity between the designation and the trademark; (5) the strength of the mark; and (6) the degree of care likely to be exercised by purchasers. The Commission need not consider every *DuPont* factor. *Shen Mfg.*, 393 F.3d at 1241. It is required to consider only those factors which are supported by evidence in the record. *Id.* Moreover, neither party challenges the Commission's choice of *DuPont* factors.

Swagway argues that the Commission accorded the wrong weight to the actual confusion factor. According to Swagway, lack of actual confusion evidence is especially probative in cases such as this where the products bearing the registered trademarked and the allegedly infringing products are sold concurrently over a substantial period of time. Swagway contends, therefore, that the Commission should have found the lack of actual confusion essentially dispositive in this case.

First, while the *DuPont* factors recognize the relevance of concurrent use without evidence of actual confusion, we have never indicated that the concurrent use factor always bars a likelihood-of-confusion finding. Instead, we have found that "[s]uch evidence weighs against a likelihood of confusion, but must then be balanced against the other evidence of record." *Guild*, 912 F.3d at 1381.

Second, the Commission never determined that the lack of actual confusion evidence cannot in any circumstance weigh against a likelihood-of-confusion finding. Instead, it found that the lack of actual confusion "d[id] not weigh in favor of a finding of a likelihood of confusion." J.A. 38. Swagway does not argue on appeal that its evidence

presented below warranted a finding of long-term, concurrent use in the same channels of trade. *See Guild*, 912 F.3d at 1381 (holding that the period during which two marks are used concurrently in similar geographic markets and channels of trade is "relevant when assessing whether the absence of actual confusion is indicative of the likelihood of confusion"). Thus, it failed to establish that the absence of actual confusion evidence should even weigh against, let alone strongly against, a likelihood-of-confusion finding under our precedent.

Swagway also argues more generally that, after reversing the ALJ's determination with regard to actual confusion, the Commission failed to "properly re-weigh the likelihood-of-confusion factors." Appellant's Br. 25. The Commission did, however, reweigh the factors and found that the "[e]vidence supporting the other factors considered by the ID, including the degree of similarity between the two marks in appearance, the pronunciation of the words, and the strength of the SEGWAY marks strongly support the ID's finding of infringement." J.A. 38. To the extent that Swagway argues that the Commission erred in its determination because "only two of the six factors considered . . . favor a likelihood-of-confusion finding," while "three factors . . . weigh against such a finding," that argument is unpersuasive as a matter of both fact and law. Appellant's Br. 26.

The ALJ never stated that the "intent of the actor" factor weighed in favor of or against a likelihood-of-confusion finding. It stated only that there appeared "to be concrete actions taken by [Swagway's founder] Mr. Zhu that lend credibility to his testimony regarding his lack of intent to infringe the Segway trademarks." J.A. 232. The Commission also did not find that the lack of actual confusion evidence weighed against a likelihood-of-confusion finding. Instead, it found that the lack of such evidence did not weigh in favor of such a finding. There was, therefore, only one factor, "relation in use and manner of marketing," that

the Commission found to weigh against a likelihood of confusion between the asserted trademarks and the SWAGWAY designation.

Moreover, the likelihood-of-confusion analysis cannot be reduced to a simple tally of the factors. The factors are accorded different weights in different circumstances. *See M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 1382 (Fed. Cir. 2006) (noting that it is necessary to consider only the *DuPont* factors relevant to and of record in a specific case, and that any one factor may control a particular case). Our precedent supports the Commission's finding that the strength of the asserted trademark, along with the comparable similarity of the asserted and allegedly infringing marks, can weigh strongly in favor of a likelihood of confusion. *See Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1336 (Fed. Cir. 2001) ("While it must consider each factor for which it has evidence, the Board may focus its analysis on dispositive factors, such as similarity of the marks and relatedness of the goods."); *I.AM.Symbolic*, 866 F.3d at 1324 (finding that the similarity of the marks weighed heavily in favor of a likelihood of confusion); *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 352 (Fed. Cir. 1992) ("The fifth [D]*uPont* factor . . . plays a dominant role in cases featuring a famous or strong mark."); *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 675 (Fed. Cir. 1984) (holding that "[w]hen an opposer's trademark is a strong, famous mark, it can never be of little consequence" in a likelihood-of-confusion analysis (internal quotation marks omitted)).

Swagway also takes issue with the Commission's failure to weigh Segway's lack of survey evidence against a likelihood-of-confusion finding. According to Swagway, Segway had the financial means to conduct surveys, and thus, its failure to do so should create "an adverse inference that such a survey would not have shown a likelihood of confusion with respect to the asserted trademarks." Appellant's Br. 27. But the adverse inference Swagway

encourages us to adopt belies our precedent. Consumer survey evidence is not required to show a likelihood of confusion. *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1054 (Fed. Cir. 2012). We have also previously declined to infer that the lack of survey evidence indicates that such evidence would be harmful to the party alleging infringement. *Id.* The Commission therefore did not err in according no weight to Segway's lack of survey evidence.

### III. Consent Order Motion

The Commission's rules grant an ALJ the discretion to terminate a § 337 investigation by consent order. 19 C.F.R. § 210.21(c) ("An investigation before the Commission *may* be terminated . . . on the basis of a consent order." (emphasis added)). An ALJ's discretion in considering a motion for consent order resolution of an investigation is somewhat cabined. When an ALJ exercises discretion to grant a proposed consent order, the Commission's rules require the ALJ to consider the impact of the proposed termination by consent order on the "public interest," including "the effect of the proposed settlement on the public health and welfare, competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and U.S. consumers." 19 C.F.R. § 210.50(b)(2). The Commission often finds that the public interest favors entry of consent orders to conserve public resources and avoid unnecessary litigation. *See, e.g.*, *Certain Integrated Circuit Chipsets & Prod. Containing Same*, Inv. No. 337-TA-428, USITC Order No. 16 (July 26, 2000) ("In addition[,] the public interest favors settlement to avoid needless litigation and to conserve public resources."); *Certain Vehicle Sec. Sys. & Components Thereof*, Inv. No. 337-TA-355, USITC Order No. 16 (Feb. 7, 1994) (denying the motion to terminate the investigation because proceeding with the investigation would "not require a substantial expenditure of public or private resources, especially in comparison with those already used in the prehearing phase of the

investigation"). The pertinent regulations do not specify the extent to which an ALJ's discretion is cabined when an ALJ decides to deny a consent order motion. We assume for purposes of this appeal, but without deciding the question, that an ALJ is guided in denying a consent order motion by the same criteria as are required when granting a motion.

A party's proposal to resolve an investigation by consent "shall be submitted as a motion to the administrative law judge with a stipulation that incorporates a proposed consent order." 19 C.F.R. § 210.21(c)(1)(ii). Commission rules specify in detail the required contents of the necessary stipulation. *See id.* § 210.21(c)(3)–(4). Such a motion may be filed at any time before the commencement of the hearing before the ALJ, but "for good cause shown, the administrative law judge may consider such a motion during or after a hearing." *Id.* § 210.21(c)(1)(ii). The filing of a consent order motion "shall not stay proceedings before the administrative law judge unless the administrative law judge so orders." *Id.* The Commission's rules further specify that if an ALJ exercises discretion to grant a consent order motion, the grant must be by issuance of an initial determination, *id.* § 210.42(c), "promptly file[d] with the Commission." *Id.* § 210.21(c)(1)(ii). But if discretion is exercised to deny the motion, the regulation requires that the denial be in the form of an order. *Id.* § 210.42(c).

The § 337 investigation in this case involved allegations of patent and trademark infringement. Swagway was accused of infringing six Segway patents, and two Segway trademarks. Swagway sought to resolve the trademark aspects of the case with respect to the SWAGWAY-branded products, but not with respect to the SWAGTRON-branded products, by consent order resolution. Accordingly, ten months after the investigation began in this case, on March 21, 2017, Swagway filed a § 210.21(c)(3)–(4)-compliant proposed consent order motion for resolution of the one trademark dispute, which Segway opposed. Swagway filed an

amended proposed consent order motion, which Segway also opposed. On April 5, 2017, Swagway requested leave to file a response to Segway's opposition, and sought to submit a third proposed consent order. During a hearing on April 18, 2017, Swagway reminded the ALJ about the pending motions, saying, "[o]ne other issue was that Swagway has a pending motion for consent order that we haven't received a ruling on." J.A. 3034. The ALJ replied, "I think we've now had how many versions of that?" *Id.* "Three, your Honor," was the answer. *Id.* The ALJ responded, "[t]hree. . . . we've had all kinds of briefing. It certainly isn't going to be ruled on . . . . before the end of the hearing. . . . The hearing moves on." *Id.* And the hearing on the merits began later that day. On August 10, 2017, the ALJ issued the final ID in the case. The second footnote to the final ID stated: "Any pending motion that has not been adjudicated is denied, unless otherwise noted." J.A. 62. Swagway's motion for consent order was thereby denied.

When the ALJ determined to proceed with a hearing on the merits, he had before him the third version of Swagway's proposed consent order. By that time, considerable party and judicial resources had been expended in the case. The parties had completed fact and expert discovery, filed summary judgment motions, served both direct and rebuttal witness statements containing all the direct testimony that would be offered at the evidentiary hearing, and served all direct and rebuttal exhibits.

Swagway petitioned the Commission for review of the ALJ's final ID and remedial Order. Swagway raised the subject of the consent order motion in its petition for review. Swagway informed the Commission that the ALJ violated § 210.42(c) by denying its consent order motion in the ID rather than in a separate order. Otherwise, Swagway's complaint with the denial of its consent order motion was that (a) it fully complied with all the regulations concerning content and (b) in Swagway's view, granting the motion would have promoted the public interest. The

Commission's final decision declined to review the ALJ's denial of Swagway's consent order motion. In doing so, the Commission found no error in the ALJ's disposition of the proposed consent order motion.

In its appeal to this court, Swagway shifts the focus of its complaint about the ALJ's denial of its consent order motion. Now Swagway makes a double-barrel argument that the denial is arbitrary, capricious and consequently a violation of the Administrative Procedure Act ("APA"). Swagway asks this Court to vacate the Commission's decision and remand for consideration of the consent order motion. Alternatively, Swagway requests that we reverse the Commission's denial of the consent order motion and direct the Commission to enter the proposed consent order.[3]

---

[3]    As an initial matter, the Commission contends that this Court lacks jurisdiction over the consent order motion issue. We find that argument unpersuasive. Under 28 U.S.C. § 1295, this Court has jurisdiction to "review the final determinations of the . . . Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337)." 28 U.S.C. § 1295(a)(6). With the jurisdiction to review the Commission's final determinations also comes the jurisdiction to review matters ancillary to or affecting the validity of those final determinations. *See Refractarios Monterrey, S. A. v. Ferro Corp.*, 606 F.2d 966, 970 n.10 (C.C.P.A. 1979) ("[S]ome review of material which may be ancillary to the final determination is necessary."); *cf. Viscofan, S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544, 552 (Fed. Cir. 1986) (finding that we had no jurisdiction to review the Commission's refusal to declassify confidential business information because the refusal "was unrelated to the propriety of the exclusion order"). The consent order motion issue clearly affects the propriety of the final determination on the merits, and thus we have jurisdiction to review the denial of that motion.

Swagway first argues that the Commission's failure to provide an express explanation for denial of the consent order motion violates the APA, as an action without explanation can be arbitrary and can frustrate appellate review. The caselaw, however, does not require that agencies explicitly spell out their rationale or reasoning in perfect detail or clarity as long as we can discern the path the agency followed. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) ("[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."); *see also Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015) ("We may affirm an agency ruling if we may reasonably discern that it followed a proper path, even if that path is less than perfectly clear.").

Here, the ALJ's, and therefore the Commission's, reason for denying Swagway's consent order motion is clear from the record. The ALJ received three versions of a proposed consent order, and briefing on the consent order was not complete until just seven days before the evidentiary hearing. By that point, the parties had expended considerable resources completing fact and expert discovery, finalizing exhibits and witness statements, and preparing for the hearing. Though Swagway could have done so under the Commission's rules, it never requested that the ALJ stay the proceedings pending resolution of its consent order motion. Thus, as the ALJ remarked, "the hearing move[d] on." J.A. 3034. Because at that stage in the investigation the public interest in avoiding unnecessary litigation could no longer weigh in favor of granting the motion, the ALJ denied it. Such a decision was within the ALJ's discretion under the Commission's rules, and we can find no abuse of that discretion, and no violation of the APA.

Second, Swagway argues that the Commission's denial of the consent order motion was arbitrary and capricious because the denial occurred in a footnote to the ID, as opposed to in an order, in violation of the Commission's rules.

The rule is clear: grants are in IDs and denials are in orders. 19 C.F.R. § 210.42(c)(1). In *Align Technology, Inc. v. International Trade Commission*, we held that the Commission is bound to follow and must strictly comply with its rules, including the ones in § 210.42(c), unless it waives, suspends, or amends them pursuant to 19 C.F.R. § 201.4(b). 771 F.3d 1317, 1325 (Fed. Cir. 2014). Here, the ALJ failed to follow § 210.42(c)(1), and the Commission propagated that error by refusing to correct the ALJ's mistake on review. Therefore, under *Align*, this case presents a rule violation cognizable under the APA.[4]

However, unlike the appellant in *Align*, who was harmed by the Commission's rule violation, Swagway is not entitled to relief under the APA. The APA specifies that we must take account of the rule of harmless error. 5 U.S.C. § 706 ("[A] court shall review the whole record . . . and due account shall be taken of the rule of prejudicial error."); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (holding that § 706 requires application of "the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases"). Swagway asserts harmful error in the ALJ's denial of its consent order motion. Swagway points to a pending litigation in which Segway is accusing it of trademark infringement on the same trademarks asserted in the Commission investigation. Swagway asserts that a consent resolution of the case would have no impact on the ongoing litigation, but a decision on the merits against it might have adverse preclusive effect in the pending litigation. Such possible prejudice arises from the decision of the ALJ

---

[4]    *Align* rejected the Commission's attempt to justify the rule violation in that case under *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 539 (1970). 774 F.3d at 1326 n.7. The Commission and Segway do not seek to justify the Commission's violation of § 210.42(c) in this case under *Black Ball Freight*.

to deny the consent motion, not from the form in which the ALJ expressed the denial. Swagway points to no harm to it from the form in which the consent order motion was denied, and after independent review of the record, we can find no such harm. Swagway also has not argued that the Commission's rejection of its complaint about the denial of the consent order motion precludes the Commission from benefitting from the harmless error rule.

The denial of Swagway's consent order motion by footnote in the ID is thus not a violation for which we can afford Swagway relief under the APA.

CONCLUSION

For the reasons above, we affirm the Commission's determination that the SWAGWAY-branded personal-transporter products infringe the '948 and '942 marks. We also affirm the Commission's denial of Swagway's consent order motion.

**AFFIRMED**

COSTS

No costs.